IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHIRLEY JOHNSON, *et al.*,          *
                                    *
      Plaintiffs,              *
                                    *
v.                                  *          Civil Case No. SAG-18-2375
                                    *
BALTIMORE POLICE DEPARTMENT,        *
*et al.*,                           *
                                    *
      Defendants.              *
                                    *
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On August 2, 2018, Plaintiff Shirley Johnson, personally and as personal representative of the Estates of Elbert Davis, Sr. ("Davis") and of Phosa Cain ("Cain"), along with Plaintiffs Delores Davis, Mary Cox, Gloria Davis, Albert Cain, Elbert Davis, Jr., Anita Cain (the administrator of the Estate of Arthur Cain), and the Use of Gail Davis, Leroy Davis, and Elbert Lee Davis (collectively, "Plaintiffs")[1] sued the Baltimore Police Department ("BPD"), along with Dean Palmere ("Palmere"), Wayne Jenkins ("Jenkins"), Ryan Guinn ("Guinn"), Richard Willard ("Willard"), William Knoerlein ("Knoerlein"), Michael Fries ("Fries"), and Keith Gladstone ("Gladstone") (collectively, "Defendants"). ECF 1. After a series of motions to dismiss and corresponding rulings, Plaintiffs filed a Fourth Amended Complaint on January 8, 2021. ECF 112.

Currently pending before the Court are two Motions to Dismiss the Fourth Amended Complaint: one by Jenkins, Guinn, Willard, Knoerlein, Fries, and Gladstone (collectively "the Individual Defendants"), ECF 118, and one by the BPD and Palmere, ECF 119. The Court has reviewed each Motion, along with the related Oppositions and Replies thereto. *See* ECF 121, 123,

---

[1] All Plaintiffs other than the two Estates will be collectively described as "Decedent's Children."

124.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, the

Motions will be granted in part and denied in part.

## I.      FACTUAL BACKGROUND

The facts alleged in the Third Amended Complaint were detailed extensively by this Court

in its Amended Memorandum Opinion of April 7, 2020, ECF 83.  Material additions in the Fourth

Amended Complaint, ECF 112, directed towards the *Monell* failure to train claim, are as follows:

- "BPD's training facilities are out-dated, ill-repaired and unable to accommodate modern training methods, and BPD lacks mechanisms to track and evaluate officer attendance and performance to ensure that the officers receive and understand the training they receive."  *Id.* ¶ 234.

- "The BPD has failed to establish a robust training program and lacks basic organizational capacities, infrastructure and support required to effectively train police officers."  *Id.* ¶ 235.

- A BPD lesson training plan in 2009 misstated the relevant standard for stop and frisks, and its stops policy misstated the applicable standard for a weapons frisk until 2015.  *Id.* ¶¶ 237-38.

- In 2015, the former director of the training academy sent an assessment to BPD leadership outlining training deficiencies, which was largely ignored.  *Id.* ¶ 239.

- Training personnel are often pulled from their duties to perform other tasks.  *Id.* ¶ 240.

- The police training academy is under-resourced and has faced budget cuts.  *Id.* ¶ 241.

- BPD fails to train on proper data collection for stops, searches, and arrests and does not use the data it collects to identify patterns and trends in its officers' conduct.  *Id.* ¶¶ 245-47.

- BPD failed to investigate and record information on complaints about specific officers, including Wayne Jenkins.  *Id.* ¶ 248.

In the Fourth Amended Complaint, Plaintiffs seek recovery of compensatory damages,

punitive damages, and reasonable attorneys' fees based on seven claims for relief.  Count I alleges

that Jenkins, Guinn, Gladstone, and Willard deprived Davis and Cain of their Fourteenth

Amendment right to due process, and "deprived the Decedent's children [sic] the love and

affection of their father," in violation of 42 U.S.C. § 1983.  *Id.* ¶¶ 264-71.  Count II, brought only

by the Davis and Cain Estates,[2] asserts that Palmere, Knoerlein, Fries, and Willard are liable under

§ 1983 for the same constitutional violations, under a supervisory liability theory.  *Id.* ¶¶ 272-78.

Count III, brought only by the Davis and Cain Estates, alleges that the BPD is also liable under §

1983 for those constitutional violations, pursuant to *Monell v. Department of Social Services*, 436

U.S. 658 (1978).  *Id.* ¶¶ 279-89.  Count IV, brought only by the Decedent's Children, asserts a

wrongful death action against Palmere, Jenkins, Guinn, Willard, Knoerlein, Fries, and Gladstone.

*Id.* ¶¶ 290-97.  Count V is a survival action, brought only by the Davis Estate, for Davis's

"conscious pain and suffering, mental anguish, pre-death fright," and other damages.  *Id.* ¶¶ 298-

302.  Count VI asserts that all Defendants, except the BPD, violated Decedent's and Cain's Due

Process rights, as guaranteed by Article 24 of the Maryland Declaration of Rights, causing

"Plaintiffs" damages.  *Id.* ¶¶ 303-06.  Finally, Count VII seeks to compel the BPD to indemnify

the individual Defendants, upon a finding of their liability to Plaintiffs.  *Id.* ¶¶ 307-12.

## II.    LEGAL STANDARDS

Jenkins, Guinn, Willard, Knoerlein, Fries, and Gladstone seek dismissal of Counts I, IV,

V, and VI of the Fourth Amended Complaint.  ECF 118.  BPD and Palmere seek dismissal of all

of the counts pending against them.  ECF 119.  Of course, a defendant is permitted to test the legal

sufficiency of a complaint by way of a motion to dismiss.  *See, e.g.*, *In re Birmingham*, 846 F.3d

88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a

---

[2] Claims brought by Decedent's children under Counts II and III were previously dismissed.  *See*
ECF 83.

plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 at 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.   ANALYSIS

The Court first addresses procedural objections to Defendants' motions raised by Plaintiffs. Next, the Court turns to Defendants' Rule 12(b)(6) arguments for dismissal.

### A.   Plaintiffs' Procedural Arguments

As a preliminary matter, Plaintiffs argue that the Court cannot consider certain exhibits and arguments raised by Defendants when ruling on these motions. The Court largely disagrees.

#### 1.   Whether Defendants' Exhibits are Properly Considered

Plaintiffs first challenge this Court's ability to consider four of Defendants' exhibits, namely a copy of the complaint filed in state court action filed by the Davis Estate and the Decedent's Children against Burley ("the Burley Lawsuit"), ECF 118-2; a Motion to Intervene and Agreed Verdict Sheet filed in the Burley Lawsuit, 118-4; a copy of the Burley Lawsuit Settlement Agreement and Release, 118-6; and a copy of the Satisfaction of Judgment filed in the

Burley Lawsuit, 118-7.  ECF 121 at 8.  This Court can "properly take judicial notice of matters of public record."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Documents from prior state court proceedings fall within "matters of public record."  *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  Thus, this Court deems it appropriate to take judicial notice of each of the above-referenced documents, with the exception of the Burley Matter Settlement Agreement and Release, which was not filed in the state court.  This Court will not rely upon that document in adjudicating this motion.

## 2.  Application of Federal Rule of Civil Procedure 12(g)(2)

Additionally, this Court does not deem it appropriate to preclude under Federal Rule of Civil Procedure 12(g)(2) any arguments Defendants raised in the instant Motions.  The Motions contest the validity of a newly filed pleading, and Defendants should be permitted to assert any viable defenses they have in connection with that pleading, whether or not they raised those defenses when responding to a prior iteration.  Moreover, "[d]efenses under Rules 12(b)(1) [and] 12(b)(6) . . . are exempted by Rule 12(g) from the consolidation requirement and are protected against waiver by Rules 12(h)(2) and 12(h)(3)."  *Miller v. Bd. of Educ. for Montgomery Cnty.*, No. TJF-19-3067, 2020 WL 7319332, at *5 (D. Md. Dec. 11, 2020) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1361 (3d ed. Oct. 2020 Update)).  This Court will therefore consider each argument Defendants have made.

## B.  Defendants' Substantive Arguments

Defendants raise several arguments for why Plaintiffs' claims should be dismissed including (1) the doctrine barring double recovery, (2) the Cain estate's lack of standing, (3) factual deficiencies to support a failure to train claim, and (4) sovereign immunity.  The Court addresses each of these arguments below.

1.  **Double Recovery**

Defendants' primary contention is that the Davis Estate and the Decedent's Children should be precluded from asserting any further claims arising from Davis's death, because those Plaintiffs recovered damages in the Burley Lawsuit for the for the same harm.  ECF 118 at 7-11; ECF 119-1 at 5-6.  They note that the harms alleged in the Burley Lawsuit by the Decedent's Children are near-identical to those alleged in this case, namely "sorrow, grief, pecuniary loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of filial care, loss of attention, loss of advice, loss of counsel, loss of training, loss of guidance, and loss of services and support which the Decedent could have and would have afforded and rendered had he continued to live."  *Compare* ECF 112 ¶¶ 290–97, *with* ECF 118-2 at ¶¶ 13–15.  Additionally, the Davis Estate received $5,000 in compensation in the underlying action.  ECF 118-4 at 10.  Thus, they reason, the Davis Estate and the Decedent's Children cannot seek compensation for their damages in this case without running afoul of the well-established prohibition against double recovery for the same harm.  *See Underwood-Gary v. Mathews*, 785 A.2d 708, 713 (Md. 2001) ("[P]laintiff is entitled to but one compensation for his or her loss, and full satisfaction of a plaintiff's claim prevents it from being further pursued."); *Bell v. Allstate Ins. Co.*, 291 A.2d 478, 479 (Md. 1972) ("Nothing can be clearer than that may be only one satisfaction for a single harm, no matter how many tortfeasors are involved, and regardless of whether they acted jointly or independently." (citations omitted)).

Plaintiffs counter by arguing that the Davis Estate was not a party to the Burley Lawsuit, and that the Decedent's Children do not seek double recovery, because § 1983 (1) is not subject to Maryland's cap on recoverable damages for wrongful death actions and (2) also permits recovery

of punitive damages. ECF 121 at 9-12. Plaintiffs are correct that the claims asserted by the Decedent's Children and those asserted by the Davis Estate must be analyzed independently.

Beginning, then, with the claims asserted by the Davis Estate, the sparse records from the state court presented here do not clearly reflect whether the Davis Estate was a formal party or intervenor in the Burley Lawsuit or not. Ultimately, though, this Court need not reach that issue. Even assuming that the Davis Estate was a party to the lawsuit and received a judgment of $5,000, the theory of double recovery/one satisfaction would not bar its current pursuit of a § 1983 claim against the Defendants. Independent harms accrued to Davis as a result of the alleged violation of his constitutional rights. *See Chisolm v. UHP Projects, Inc.*, 205 F.3d 731 (4th Cir. 2000) ("The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm."). This is not, then, a simple situation with multiple tortfeasors like those presented in most double recovery cases. The constitutional harms, of which Plaintiffs were unaware when they sued Burley, clearly were not adjudicated in the state tort action. *Cf. Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (holding that because "every violation [of a right] imports damage," a civil rights plaintiff could pursue constitutional claims even if he did not quantify additional economic harms). The question of whether punitive damages are appropriate was not addressed in the state tort action, either. *See, e.g.*, *Medina v. District of Columbia*, 643 F.3d 323, 329 (D.C. Cir. 2011) (determining that the rule against double recovery is inapplicable when the damages awarded are punitive); *Clappier v. Flynn*, 605 F.2d 519, 529 (10thCir. 1979) ("[E]xcept in cases in which punitive damages may be allowed, an injured party may recover damages only for the actual loss he suffered and no more."). Thus, the Davis Estate may proceed with its § 1983 claims in Counts I, II, and III, brought pursuant to the authority in Maryland's personal representative or "survival

statute," to seek compensation including punitive damages for the alleged injuries to Davis's constitutional rights.

It is true that if some portion of the $5,000 awarded to the Davis Estate was intended to compensate the Estate for Davis's "conscious pain and suffering, mental anguish, pre-death fright, and funeral and burial expenses, medical expenses and other damages permitted by law," then that $5,000 will have to be deducted from any award of damages for those harms if the Estate pursues them in this case. At this stage, however, the record does not clearly establish the purpose of that $5,000 award, which presumably will be fleshed out as the litigation progresses.

Turning, then, to the claims asserted by the Decedent's Children, the critical issue is the viability of any of their constitutional claims. As this Court explained in its April 7, 2020 Amended Memorandum Opinion, ECF 83 at 25-27, 34, the Decedent's Children do not have viable § 1983 claims because their constitutional rights were not violated, and they cannot recover under § 1983 for incidental damages they suffered from the alleged violation of their parents' constitutional rights. Although the Court's prior opinion only dismissed the Decedent's Children's § 1983 claims in Counts II and III, it did so because it is unclear from the language of Count I that Plaintiffs intended to assert a claim on behalf of the Decedent's Children. To the extent they did, that claim is also subject to dismissal for the same reasons pertaining to Counts II and III. Additionally, the claim asserted by the Decedent's Children under Article 24 of the Maryland Constitution in Count VI meets the same fate. Article 24 is interpreted *in pari materia* with the Fourteenth Amendment. *See Littleton v. Swonger*, 502 F. App'x. 271, 274 (4th Cir. 2012) (stating that Article 24 is "construed *in pari materia* with the . . . Fourteenth Amendment[ ]"); *Dent v. Montgomery Cnty. Police Dep't*, 745 F. Supp. 2d 648, 661 (D. Md. 2010) (same); *Tyler v. City of College Park*, 3 A.3d 421, 435 (Md. 2010) (recognizing that Maryland courts "interpret Article 24 *in pari materia*

with the Fourteenth Amendment to the United States Constitution"). Thus, the lack of any alleged plausible violation of the due process rights of the Decedent's Children would also preclude their assertion of a Maryland constitutional claim.

With those rulings, then, the only remaining count on behalf of the Decedent's Children is their wrongful death claim in Count IV. That claim, like the claims in the Burley Lawsuit, is subject to Maryland's statutory damages cap, and "punitive damages are not recoverable in cases arising under the wrongful death statute." *Cohen v. Rubin*, 460 A.2d 1046, 1056 (Md. 1983); *Est. of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp. 3d 409, 424 n.8 (D. Md. 2014) (striking claim for punitive damages sought in connection with wrongful death action). In the absence of any additional harms or additional damages that could be recovered, permitting the Decedent's Children to maintain a second wrongful death claim would violate the double recovery principle discussed above. As a result, Count IV will be dismissed.

### 2.  Standing of the Cain Estate

Viewing the allegations in the light most favorable to Plaintiffs, the Fourth Amended Complaint adequately alleges claims brought by Shirley Johnson as personal representative of the Cain Estate. Defendants are correct that the claims are inartfully pleaded.[3] Essentially, though, Maryland's so-called "survival statute," Md. Code Ann. Est. & Trusts § 7-401(y), authorizes the personal representative of a decedent's estate to commence an action that the decedent could have filed if the decedent had lived. It does not require that the Complaint expressly allege reliance on the survival statute, nor does it require a separate claim or count bringing a "survival action." In

---

[3] For example, Defendants correctly note that the Fourth Amended Complaint includes an express "survival action" count for the Davis Estate, but not for the Cain Estate. As noted herein, however, there is no separate cause of action for survival. Despite the inconsistent pleading, then, Plaintiffs were not required to assert a separate survival count to have a valid § 1983 claim on behalf of either Estate.

fact, this Court agrees with the view expressed by other judges on this Court that a separate "survival" claim is improper, because the survival statute creates no independent cause of action. *See, e.g.*, *Minor v. Prince George's Cnty., Md.*, Civ. No. PWG-15-983, 2017 WL 633321, at *1 (D. Md. Feb. 15, 2017) ("Maryland's Survival Act, Md. Code Ann., Est. & Tr. § 7-401(y) does not provide a separate and distinct cause of action.") (internal quotations omitted); *Gardner v. Greg's Marine Const., Inc.*, Civ. No. DKC-13-1768, 2014 WL 198215 (D. Md. Jan. 14, 2014) (dismissing a count because "there is no separate cause of action known as a 'survival claim'" and explaining that "a survival action is brought by the personal representative asserting a claim that could have been brought by the decedent, had he survived").

The Fourth Amended Complaint alleges that Johnson is the personal representative of the Cain Estate, and alleges that Cain suffered injury from Defendants' actions, including their violations of her federal and state constitutional rights.   *See, e.g.*, ECF 112 ¶¶ 16, 268. Accordingly, viewing the allegations in the light most favorable to Plaintiffs, the Fourth Amended Complaint adequately states plausible claims for relief and establishes Johnson's standing, as personal representative, to assert claims for violation of Cain's constitutional rights on behalf of Cain's estate.

### 3.  *Monell* Failure to Train Claim

In its prior Amended Memorandum Opinion, this Court made clear that Plaintiffs had asserted a viable *Monell* claim under a theory of condonation of a widespread practice of unconstitutional activity.  ECF 83 at 37-40.  Nevertheless, Plaintiffs sought in the Fourth Amended Complaint to add factual allegations to bolster their "failure to train" theory of liability.  *See* ECF 112 at 4 ("This Fourth Amended Complaint is filed to amend and clarify Plaintiffs' claims asserted

under Count III to include specific deficiencies in training by BPD.").  Despite the additions, Plaintiffs' failure to train allegations still do not amount to a plausible claim.

Essentially, Plaintiffs try to force a square peg into a round hole by alleging a broad array of egregious and, in some instances, criminal conduct by officers employed by the BPD, and then suggesting that routine training improvements, such as more up-to-date training facilities or better resources, would have avoided that conduct.  Plaintiffs do not and cannot allege that BPD trained its officers to plant illegal evidence or make false statements about events, or, put another way, that it failed to train its officers *not* to plant illegal evidence or make false statements about events.  Thus, Plaintiffs have not plausibly alleged that the officers' decision to engage in the alleged intentional wrongful conduct resulted from some training deficiency.  *See, e.g.*, *McDowell v. Grimes*, No. GLR-17-3200, 2018 WL 3756737, at *4 (D. Md. Aug. 7, 2018) (explaining a failure to train claim requires plausible allegations "that the officer's conduct resulted from [the alleged deficient] training"); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) (noting that "the identified deficiency in a city's training program must be closely related to the ultimate injury" for liability to attach).  The allegations here are not that the officers were confused or misguided about whether they had a legal basis to stop or pursue Burley's vehicle, but that they intentionally engaged in misconduct as they had on a regular basis.  The relatively generic, or otherwise inapplicable, failure to train allegations added in this version of the Complaint do not fix the seemingly intractable disconnect between the officers' alleged conduct and insufficient training.

Of course, the Estates' *Monell* claim, which asserts a long history of unconstitutional abuses by plainclothes officers, including some of those named in this case, remains viable on the theory of condonation.  The failure to train claim, however, will again be dismissed without prejudice.

### 4. Sovereign Immunity

Finally, Palmere argues that Counts IV and V should be dismissed against him in his personal capacity as well as his official capacity, on the grounds of sovereign immunity. ECF 119-1 at 12-13. Because Count IV is dismissed for the reasons set forth above, the sovereign immunity issue need not be reached. Palmere's motion will also be granted as to Count V which, as noted above, does not state a viable separate cause of action in any event, but simply articulates the grounds on which the Davis Estate can assert § 1983 claims Davis otherwise could have brought on his own behalf.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss, ECF 118 and 119, are GRANTED IN PART and DENIED IN PART. A separate implementing Order follows.

Dated: April 23, 2021                                         _____/s/_____
                                                             Stephanie A. Gallagher
                                                             United States District Judge